[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14784
Non-Argument Calendar

_____

D. C. Docket No. 05-60437-CV-WJZ

KAREN HARDY,
HENRY HANNAH,

Plaintiffs-Appellants,

versus

BROWARD COUNTY SHERIFF'S OFFICE,
KEN JENNE, Sheriff,
THEOPHILUS WOULARD,
MYKO COKER,
ALBURY A. BURROWS,
WILLIAM JACKSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 6, 2007)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Henry Hannah and Karen Hardy ("Appellants" or "Plaintiffs"), proceeding pro se, appeal the district court's dismissal of their civil rights action. For the reasons that follow, we affirm.

## I. BACKGROUND

Appellants filed a 42 U.S.C. § 1983 action against the Broward County Sheriff's Department, Sheriff Ken Jenne, Sergeant William Jackson, and Deputies Theophilus Woulard, Albury Burrows, and Myko Coker ("Defendants"), alleging that Defendants violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.

According to the complaint, Hannah was inside Hardy's apartment watching television on January 3, 2004, when a power outage occurred. Hannah went outside to investigate and was approached by Deputies Woulard, Burrows, and Coker. The Deputies, with "weapons drawn," ordered Hannah to the ground. Hannah told the Deputies that he was not the person they were looking for, and upon viewing Hannah's identification (which they had retrieved from his wallet), the Deputies asked Hannah the whereabouts of his brother, Herman Hannah. While Hannah was lying face-down in front of the partially open door of the

2

apartment, two of the Deputies entered the apartment. After approximately three minutes, one of the Deputies exited the apartment and again asked Hannah "where's your brother?" Hannah replied that he did not know. The Deputies then escorted the handcuffed Hannah into the apartment and again demanded that Hannah tell them where they could find Herman.

The Deputies began a warrantless search of the apartment and spotted a white, ceramic bowl. Upon removing the lid from the bowl, the Deputies found a plastic bag that contained what they believed to be a controlled substance. After field-testing the substance, the Deputies determined that it was cocaine, and one of the Deputies stated that he "[knew] now [that Hannah] would tell [them] where [his] brother" was located. Hannah replied that he did not know Herman's whereabouts and stated that the Deputies were unlawfully inside the apartment.

Around this time, Hardy entered her apartment, and upon seeing the Deputies and a handcuffed Hannah, she asked the Deputies if they had a search warrant. The Deputies responded that they did not have a warrant but they had found cocaine inside the apartment. Deputy Woulard asked Hardy if she had ever seen the cocaine-filled bags that were found in the ceramic bowl, and Hardy replied that she had not. Hardy also noticed that Deputy Coker had entered her bedroom and opened her dresser drawer.

3

The Deputies took Hannah to the police station and charged him with trafficking 28 grams of cocaine. He remained in jail for 10 days before he was released on bond. Upon his release, he filed an "internal affairs" complaint against the Deputies with the Broward County Sheriff's Office. Sergeant Jackson investigated the complaint and concluded that the Deputies' actions were proper. Ultimately, the charge against Hannah was reduced to possession with the intent to distribute 20 (instead of 28) grams of cocaine.

The complaint also alleged that the Deputies harassed Hannah by "walking out of the dark around corners during the night in the nature of an investigating manner," telling other officers that his brother Herman had shot at the Deputies, and jailing him overnight for a misdemeanor charge.

Hardy alleged that on January 4, 2004, the day after Hannah's arrest, the Deputies harassed her by stopping her and searching both her and her vehicle while she was driving to her job. She also alleged that on the following day, the Deputies stopped her and searched her while she was walking to a friend's house. After the second search, Hardy filed her own "internal affairs" complaint against the Deputies. As with Hannah's complaint, Sergeant Jackson investigated Hardy's complaint and ultimately found that the Deputies' conduct was proper.

In support of the instant complaint, Appellants attached, inter alia, (1) letters

from the Broward County Sheriff's Office of Professional Compliance informing Appellants of the investigations into their complaints and the outcome of those investigations; (2) Appellants' affidavits; and (3) Deputy Woulard's police report from Hannah's arrest.

According to Woulard's police report, Hannah's brother Herman was a fugitive wanted for aggravated assault on a law enforcement officer. Deputies Woulard and Burrows had received information linking Herman to Hardy's apartment. The Deputies investigated the address on January 1, 2004 and observed that Herman was not there. On January 3rd, the Deputies conducted a follow-up investigation and observed Hannah walk outside and leave the apartment door partially open. From their vantage point, which was several feet away, the Deputies believed that Hannah was Herman, and they detained Hannah to verify his identity. At that point, Hannah "spontaneously replied" that he "had nothing to do with the shooting, it's my brother you're looking for. We look alike." As the Deputies escorted Hannah back toward the apartment, Deputy Woulard smelled the aroma of "burnt cannabis." Woulard "peek[ed] into the door" and saw, in plain view, a white bowl[1] containing a large clear plastic bag, which itself contained smaller, clear plastic bags filled with a substance that Woulard suspected was

---

[1] Deputy Woulard's report does not indicate whether the bowl was covered (either completely or partially) with a lid or a top.

5

cocaine. The Deputies then conducted "a general non-invasive" search of the apartment to determine whether Herman was inside. The Deputies also field-tested the suspicious substance and confirmed that it was cocaine.

After the Deputies gave Hannah his Miranda[2] warnings, he admitted that he had smoked marijuana before exiting the apartment and that the cocaine was his. Hannah was then taken into custody and transported to the police station.

In response to the complaint, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion, concluding that (1) Plaintiffs had failed to make any specific factual allegations of wrongdoing against the Broward County Sheriff's Department and Sheriff Jenne, (2) Plaintiffs had failed to state a cognizable claim against Sergeant Jackson, and (3) the Deputies were entitled to qualified immunity. This appeal followed.

## III. DISCUSSION

### A. Whether the Deputies were Entitled to Qualified Immunity

On appeal, Appellants argue that they sufficiently alleged that Deputies Woulard, Burrows, and Coker violated Hannah's constitutional rights, and the district court erroneously concluded that the Deputies were entitled to qualified immunity. Specifically, Appellants assert that the Deputies violated (1) Hannah's

_____

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6

Fourth Amendment rights by forcibly detaining him without probable cause[3] and conducting a warrantless search of Hardy's apartment, and (2) Hannah's right to be informed of the charges against him under the Fourteenth and Sixth Amendments, as the Deputies never arrested Hannah for, nor read the <u>Miranda</u> warnings regarding, his "consumption of marijuana."[4]

"We review a district court's grant of a motion to dismiss based on qualified immunity <u>de novo</u> and accept well-pleaded allegations as true, construing facts in the light most favorable to the plaintiffs." <u>Collier v. Dickinson</u>, 477 F.3d 1306, 1308 (11th Cir. 2007). "A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003). "Once the affirmative defense of qualified immunity is advanced[,] . . . [u]nless the plaintiff's

---

[3] On appeal, Appellants also claim that the Deputies violated Hannah's Fourteenth Amendment rights to due process and equal protection by arresting and detaining him without probable cause. In support of this claim, however, Appellants repeat the arguments they raise regarding their claim that the Deputies violated Hannah's Fourth Amendment rights by detaining him without probable cause. We therefore address these claims together under the Fourth Amendment rubric.

[4] In their brief, Appellants do not challenge, and indeed do not mention, (1) the district court's dismissal of their claims against the Broward County Sheriff's Department, Sheriff Jenne, and Sergeant Jackson, (2) the dismissal of their claims of harassment by the Deputies, and (3) the dismissal of Hardy's claim that the Deputies violated her Fourth Amendment rights by conducting a warrantless search of her apartment. Appellants have thus abandoned these issues on appeal, and we do not discuss them further. Although we afford liberal construction to <u>pro se</u> pleadings, a <u>pro se</u> litigant who offers no substantive argument on an issue in his initial brief abandons a challenge to that issue on appeal. <u>See</u> <u>Irwin v. Hawk</u>, 40 F.3d 347, 347 n.1 (11th Cir. 1994) (noting that a <u>pro se</u> litigant abandons an issue by failing to challenge it on appeal).

7

allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001) (internal quotation marks omitted).

Qualified immunity protects government officials, acting within their discretionary authority, "from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (internal quotation marks omitted). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). The burden then "shifts to the plaintiff to show that qualified immunity is not appropriate." Id. "The Supreme Court has set forth a two-part test for the qualified immunity analysis." Vinyard v. Wilson, 311 F.3d 1340, 1349 (11th Cir. 2002). A court must first determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citations omitted). "If a

8

constitutional right would have been violated under the plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established." Vinyard, 311 F.3d at 1349 (internal quotation marks and citations omitted).

Appellants do not dispute that the Deputies were acting within the scope of their discretionary authority when the allegedly wrongful conduct occurred. Thus, we consider only whether Appellants' allegations, if true, establish that the Deputies violated clearly established constitutional law.

### 1. Hannah's Fourth Amendment Rights

The Fourth Amendment[5] provides for the right to be free of unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.

### *a. The Deputies' Forcible "Detention" of Hannah*

Hannah argues that "probable cause" to "forcibly detain" him without a warrant "ceased to exist" when the Deputies "discovered that [he] was not his Brother Herman," and the Deputies violated his Fourth Amendment rights by continuing to detain him after this discovery. As the district court noted, this claim appears to be an attempt to allege either an unlawful Terry[6]-stop, *or* an arrest

---

[5] The Fourth Amendment applies to the states via the Fourteenth Amendment. United States v. Davis, 313 F.3d 1300, 1302 (11th Cir. 2002).

[6] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

9

lacking probable cause.

When a police officer makes a Terry-stop, that is, a brief seizure or investigatory detention, United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006), the Fourth Amendment is satisfied if the officer "has an objectively reasonable suspicion that criminal activity may be afoot." United States v. Dunn, 345 F.3d 1285, 1289 (11th Cir. 2003) (internal quotation marks omitted). "Reasonable suspicion is determined from the totality of circumstances and collective knowledge of the officers." United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006).

When a police officer makes an *arrest*, as opposed to a Terry-stop, the officer must have *probable cause* to believe that the arrestee has committed, is committing, or is about to commit a crime. See Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). If the officer lacks probable cause, the arrest violates the Fourth Amendment, id., and "the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996). But the existence of probable cause is an absolute bar to such claims. Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990).

"For probable cause to exist, an arrest must be objectively reasonable based

10

on the totality of the circumstances." Lee, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). "To receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause." Wood, 323 F.3d at 878 (internal quotation marks omitted). Because only arguable probable cause is required, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

After reviewing the record, we conclude that the facts alleged do not demonstrate that the Deputies lacked either reasonable suspicion to stop Hannah or arguable probable cause to arrest him. First, Hannah concedes that the Deputies' initial stop was proper on the basis of misidentification, as it was made in order to determine whether Hannah was his brother Herman, a fugitive from the law. Moreover, in the police report, Deputy Woulard asserted that upon escorting Hannah back to the apartment, he smelled burnt cannabis emanating from the

11

residence. Appellants failed to challenge this assertion in either their complaint or their brief. The smell of cannabis emanating from the apartment would have caused a prudent person to believe that cannabis could be found inside the apartment and that Hannah (or someone else inside the apartment) had been smoking it.[7] As discussed in greater detail below, the smell of cannabis coupled with the possibility that Herman might have been inside the apartment created both probable cause and exigent circumstances sufficient to justify the Deputies' entry into and search of the apartment. And contrary to Hannah's assertions, the cocaine found inside the apartment during this search provided the Deputies with probable cause to arrest him for the offense with which he was ultimately charged. As such, the facts alleged do not establish a Fourth Amendment violation regarding Hannah's arrest and detention, and thus, the district court did not err in holding that the Deputies were entitled to qualified immunity on this claim.

### b. The Deputies' Warrantless Search of Hardy's Apartment

Hannah also contends that the Deputies' warrantless search of Hardy's apartment violated Hannah's Fourth Amendment rights because the Deputies lacked probable cause to enter and search the apartment when they discovered that

---

[7] Under Florida law, cannabis is a controlled substance, Fla. Stat. § 893.03(5), and the possession of cannabis is either a misdemeanor or felony offense depending on the amount, Fla. Stat. § 893.13(6)(a)-(b).

Hannah was not his brother Herman. We disagree.

In general, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005). A warrantless search inside a person's home is therefore presumptively unreasonable. United States v. Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983). There are, however, exceptions to the warrant requirement. Magluta, 418 F.3d at 1182. For example, a warrantless search is justified where *both* probable cause *and* exigent circumstances exist. United States v. Santa, 236 F.3d 662, 668 (11th Cir. 2000). "Recognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect." Id. at 669 (internal quotation marks omitted).

Here, Deputy Woulard asserted that he smelled "burnt cannabis" emanating from the partially open door of the apartment—an assertion Hannah does not deny. The Deputies therefore had probable cause to believe that someone inside the apartment had been smoking cannabis and that this cannabis could be found somewhere inside the apartment. Moreover, had the Deputies delayed entering the apartment, they risked the "loss, destruction, removal, or concealment of evidence"

13

of this suspected crime, thereby creating exigent circumstances. <u>See</u> <u>id.</u> Thus, even had the cocaine-filled, plastic bags *not* been "in plain view" from outside the partially open door of the apartment (that is, even had the ceramic bowl been covered with a lid as Hannah alleged), the Deputies had probable cause to believe that *cannabis* could be found *somewhere* inside the apartment (including inside the ceramic bowl), and there was a risk that Hannah would remove or destroy this cannabis (or the possible vestiges thereof). This combination of probable cause and exigent circumstances justified the Deputies' warrantless search of Hannah's apartment, and therefore, the cocaine found inside the ceramic bowl was properly seized. That the Deputies did not find any cannabis is of no moment, especially where following Hannah's arrest, he admitted that he had smoked cannabis inside the apartment just before the Deputies arrived.[8]

Furthermore, the Deputies had received information linking Herman, a fugitive, to the apartment. As such, there was at least arguable probable cause to believe that Herman was inside the apartment and that Hannah was therefore harboring a fugitive. And had the Deputies delayed entering the apartment, they risked the possibility that Herman would flee.

---

[8] Hannah does not dispute Deputy Woulard's contention that following his arrest, he admitted to the Deputies that he had smoked cannabis inside the apartment just before the Deputies arrived.

14

Accordingly, Hannah has failed to establish that the warrantless search of Hardy's apartment violated his constitutional rights, and thus, the district court did not err in concluding that the Deputies were entitled to qualified immunity on this claim.[9]

## 2. Hannah's Right to Be Informed of the Charges Against Him

Hannah also argues that the Deputies violated his constitutional right to be informed of the charges against him because the Deputies never arrested him for, nor read the <u>Miranda</u> warnings regarding, his "consumption of marijuana." Hannah contends that he was never "informed of the nature of marijuana being burned in the apartment" even though Woulard claimed to have entered the apartment because he smelled cannabis.

The Sixth Amendment[10] provides that "[i]n all criminal *prosecutions,* the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation."  U.S. Const. amend. VI (emphasis added).  That is, "[t]he Sixth Amendment guarantees every defendant the right to be informed of the Government's accusation against him."  <u>United States v. Silverman</u>, 745 F.2d

---

[9] The district court based its conclusion on a finding that Hannah had failed to assert that he had a reasonable expectation of privacy in Hardy's apartment.  But we may affirm the judgment below "on any ground that finds support in the record."  <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1256 (11th Cir. 2001).

[10] The Sixth Amendment is applicable to the states via the Fourteenth Amendment. <u>Moon v. Head</u>, 285 F.3d 1301, 1314 n.15 (11th Cir. 2002).

15

1386, 1392 (11th Cir. 1984).

Here, it is undisputed that Hannah was never "criminally prosecut[ed]" for or formally charged with marijuana consumption. Hannah does not have a constitutional right to be informed of accusations that the Government never made, and he therefore could not have suffered a Sixth Amendment violation for an offense for which he was never charged or prosecuted. Thus, Hannah has not established a constitutional violation, and the Deputies are entitled to qualified immunity on this claim. See Hope, 536 U.S. at 736, 122 S.Ct. at 2513.

## B. Failure to Allow Discovery or Hold an Evidentiary Hearing

Appellants also contend that the district court erred by failing to hold an evidentiary hearing or allow discovery before dismissing the complaint. We review for abuse of discretion the district court's denial of discovery. Arthur v. Allen, 452 F.3d 1234, 1243 (11th Cir. 2006). We also review the district court's grant of a motion to dismiss without an evidentiary hearing for abuse of discretion. Sunseri v. Macro Cellular Partners, 412 F.3d 1247, 1250 (11th Cir. 2005).

Qualified immunity "is an immunity from suit rather than a mere defense to liability." Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996). Thus, qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial

16

matters such as discovery.  Blinco v. Green Tree Servicing, LLC, 366 F.3d 1249, 1252 (11th Cir. 2004).  As such, "qualified immunity questions should be resolved at the earliest possible stage of a litigation."  Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034, 3042 n.6, 97 L.Ed.2d 523 (1987).

As discussed above, we conclude that the district court did not err in finding that the Deputies were entitled to qualified immunity in this case.  Because we reached this conclusion accepting Appellants' version of events as true, additional facts adduced during discovery would not have aided this determination.  And because qualified immunity protects government officials from having to bear the burdens of pretrial matters such as discovery, we conclude that the district court did not abuse its discretion by dismissing the complaint before discovery.

For similar reasons, we also reject Appellants' contention that the district court abused its discretion by failing to conduct an evidentiary hearing.  Again, accepting Appellants' account of the facts as true, we conclude that they failed to establish that the Deputies violated clearly established constitutional law. Additional facts adduced from an evidentiary hearing would not have aided in this determination.  Moreover, "courts will 'turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where . . . the protestor did not seasonably request such a hearing in lower court.'"  Sunseri, 412

17

F.3d at 1250 (quoting <u>Aoude v. Mobil Oil Corp.</u>, 892 F.2d 1115, 1120 (1st Cir. 1989)).  Here, Appellants never requested an evidentiary hearing in the district court.  We therefore conclude that the district court did not abuse its discretion by failing to convene such a hearing.

### C. <u>Opportunity to Amend the Complaint</u>

Finally, Appellants argue that the district court should have granted them leave to amend their complaint, even though they never requested leave to amend before the district court.

In <u>Wagner v. Daewoo Heavy Industries America Corp.</u>, 314 F.3d 541, 542 (11th Cir. 2002) (<u>en banc</u>), this court held that a district court was not required to <u>sua sponte</u> grant a *counseled* party leave to amend his complaint when no motion to amend had been filed.  The applicability of <u>Wagner</u> to <u>pro se</u> litigants, however, remains an open question.  <u>See</u> <u>id.</u> at 542 n.1 ("In this opinion, we decide and intimate nothing about a party proceeding <u>pro se</u>.").  But even if we were to hold that <u>Wagner</u> does *not* extend to <u>pro se</u> plaintiffs, in this case, the district court properly dismissed Appellants' complaint without <u>sua sponte</u> granting them leave to amend because amendment would have been futile.  <u>See</u> <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1262 (11th Cir. 2004) (holding that "denial of leave to amend is justified by futility when the complaint as amended is still subject to

18

dismissal"). As we concluded above, Appellants failed to establish that the Deputies violated clearly established constitutional law, and therefore, the Deputies are entitled to qualified immunity. Accordingly, the district court did not err in failing to <u>sua sponte</u> grant Appellants leave to amend their complaint.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.