[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-11225

————————————————

D.C. Docket No. 6:15-cv-565-RBD-KRS

LESLIE BAAS, TRACY OSTEEN and DOYLE NAPIER,

Plaintiffs–Appellants,

versus

MICHAEL A. FEWLESS and JOHN MCMAHON,

Defendants–Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(April 2, 2018)

Before WILSON and BLACK, Circuit Judges, and SCHLESINGER,[*] District
Judge.

———————————

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of
Florida, sitting by designation.

SCHLESINGER, District Judge:

Leslie Baas, Tracy Osteen, and Doyle Napier appeal an adverse summary judgment granted in favor of Appellees Michael Fewless and John McMahon. This appeal requires us to answer whether the Driver's Privacy Protection Act excepts authorized acts of lobbying from its purview. We hold that it does. We further hold that Appellees are entitled to qualified immunity.

I

In 2011, Fewless served as Captain of the governmental affairs section of the Orange County Sheriff's Office ("OCSO"), a position which required him to work with state, local, and federal representatives concerning the passage of local, state, and federal legislation. Fewless spent three or more days each week in Tallahassee while the Florida Legislature was in session, often testifying before both of houses. Fewless also assisted the Florida Sheriff's Association ("FSA") with certain bills that came before the Florida Legislature.

In April 2011, while attending an FSA meeting, a discussion arose concerning a pending Florida Senate bill that, if passed, would permit the open carry of firearms in Florida ("Bill"). During the meeting, one law enforcement officer remarked that many members of the "One Percenters Motorcycle Clubs"[1] possessed concealed carry permits, and would be permitted to carry their weapons

---

[1] The One Percenters Motorcycle Clubs refers to a collection of motorcycle clubs, and includes the Outlaws Motorcycle Club. Appellants are members of the Outlaws Motorcycle Club.

2

openly if the Bill passed.   As Florida's law enforcement community was vehemently opposed to open carry, the OCSO tasked Fewless with opposing the Bill.

At some point, Fewless determined that presenting Florida's Senate Judiciary Committee with photos of One Percenters would "shock the Committee" and bolster support against the Bill's passage.  Fewless asked John McMahon, an intelligence agent with the OCSO, to procure the photos.

Based on Fewless' request, Agent McMahon selected twenty-two photos of One Percenter Motorcycle Club members, each of whom possessed concealed carry permits. The photos chosen were either booking or driver's license photographs.  Agent McMahon subsequently emailed the photos to Fewless and the two discussed the general backgrounds of those pictured.  Fewless ultimately selected the seven photos he thought best personified the negative impact open carry would have in Florida.

The following day, Fewless forwarded the e-mail containing such photos to Tim Cannon, the assistant director of the FSA, for printing and packaging.  The packages contained only photos and no other identifying information.  Fewless personally delivered these packages to each Committee member's office.  He then testified before the Committee that the photos exemplified the type of persons that law enforcement would have concerns about should the Bill pass.  Fewless did not

3

identify the people in the photos by name or address, nor did he actually present the photos at the Committee hearing.

In April 2015, Plaintiffs filed a three-count complaint alleging that Fewless and Agent McMahon violated the Driver's Privacy Protection Act (DPPA) by obtaining and disclosing each Plaintiff's driver's license photo for an impermissible purpose. Defendants moved for summary judgment. The District Court granted the motion, concluding that the DPPAs's Government Function Exception encapsulated "lobbying" on the basis of the DPPA's "broad language" and Florida's statutory definition of "lobbying." Appellants filed a motion for reconsideration, which the District Court also denied. This appeal followed.

II

We review a district court's grant of summary judgment *de novo*, "applying the same standards applied by the district court." *Acevedo v. First Union Nat. Bank*, 357 F.3d 1244, 1246–47 (11th Cir. 2004). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307, (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson*

4

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We view all submitted evidence in the light most favorable to the non-moving party. *Hillburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999) (citing Fed. R. Civ. P. 56(c)).

### III

We begin with the DPPA. The DPPA prohibits the obtainment or disclosure of personal information from motor vehicle records for any use not permitted under the fourteen specific exceptions delineated in § 2721(b) the Act. 18 U.S.C. § 2722(a). The exception relevant to this appeal—colloquially known as the "Government Function Exception"—permits disclosure of personal information for "use by any government agency, including any court or law enforcement agency, in carrying out its functions . . . ." 18 U.S.C. 2271(b)(1). The chief question here is whether lobbying by a government agent constitutes a government function within the meaning of the Government Function Exception.

Because the DPPA does not define "functions," interpretation of the term is a matter of federal law. *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1223 (11th Cir. 2009). In *Rine*, we interpreted the DPPA and construed "function" in accordance with its dictionary definition, stating: " 'Function' is defined as 'the action for which a person or thing is specially fitted, used, or responsible or for which a thing exists; the activity appropriate to the nature or position of a person or

5

thing.' " *Id.* (quoting *Webster's Third New Int'l Dic.* 920 (3d ed. 1966)).  Whether activities challenged under the DPPA are appropriate, we concluded, is answered by reference to state law.  *Id.*

The question then, becomes whether Florida law characterizes lobbying as an appropriate government function.  Florida's statute governing lobbying before the Florida Legislature defines "lobbyist" as "a person who is principally employed for governmental affairs by another person or governmental entity to lobby on behalf of that person or governmental entity."  Fla. Stat. § 11.045(1)(g) (2015). The statute further defines "lobbying" as "influencing or attempting to influence legislative action or nonaction through oral or written communication or an attempt to obtain the goodwill of a member or employee of the Legislature."    § 11.045(1)(f).    Thus, as a matter of law, attempts to influence the Florida Legislature by persons employed to lobby on behalf of a state entity—viz., a Florida Sheriff's Office—are excepted from the DPPA's purview.

On appeal, Appellants do not dispute lobbying falls within the scope of the governmental duties of the OCSO and Fewless.[2]  Rather, Appellants assert that a genuine dispute of material fact exists as to whether Fewless' activities were

---

[2] OCSO General Order 3.1.0 establishes the OCSO's Legislative and Government Affairs Section, of which Appellee Fewless is a member, as "the liaison between the Sheriff's Office and various branches of Orange County, State of Florida and Federal Governments."  As the OCSO's "liaison," Fewless spent three or more days a week in Tallahassee while the Florida Legislature was in session, often testifying before both offices.   As such, Appellee Fewless' job description falls squarely within Florida's definition of "lobbyist."  *See* Fla. Stat. § 11.045(1)(g).

proper or authorized attempts to influence the Florida Senate Judiciary Committee on behalf of the OCSO. To defeat summary judgment, however, required Appellants to submit evidence to the District Court in support of that assertion. *See* Fed. R. Civ. P. 56(c).

The evidence Appellants chiefly rely on is the OSCO documentation imposing disciplinary against Agent McMahon. However, the documentation reflects that Agent McMahon was disciplined for admitting ignorance as to the existence and application of the DPPA and Florida statutes, not for a violation of those laws. Fewless was not disciplined at all. As such, nothing in the disciplinary documentation would justify the District Court, or this one, in drawing an inference that the challenged action was an unauthorized act of lobbying.

Appellants further submit that Fewless' personal opinion of the Bill suggests the lobbying was not performed as part of a government function. Fewless' deposition testimony reflects his concerns about the impact open carry would have on Florida's tourism industry. Nonetheless, Fewless' private opinion about the Bill is not evidence that the lobbying was performed in his personal capacity, rather than his official one. And it is not evidence that the OCSO's rationale for lobbying against the bill was unrelated to the execution of their governmental duties.

Instead, the record reflects that Fewless used the photos while acting on

behalf of the OCSO in the course of carrying out the OCSO's lobbying function. The photos were delivered to the Committee and were seen only by legislators and staff members.    Fewless merely referred to the photos in the course of his testimony before the Committee.    Thus, the distribution of the photos related directly to Fewless' lobbying efforts.    The record contains nothing to unsettle the legal conclusion that, when Fewless distributed the photos, he was "acting on behalf of a Federal, State, or local agency in carrying out its functions."    18 U.S.C. § 2721(b)(1).    Therefore, the district court correctly determined Appellees are entitled to summary judgement.[3]

## IV

As alternate grounds for affirmance, we hold that Appellees are entitled to qualified immunity.    *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

---

[3] In their brief, Appellants also suggest that the District Court erred in failing to apply a "balancing of interests" test to the disclosures.    Notably, Appellants cite no cases which apply a balancing test to the DPPA.    Nevertheless, Congress has already struck that balance in enacting the DPPA's prohibitions and exceptions.    Potentially subjecting government functions that Congress has already excepted from the DPPA's purview—through application of a balancing test or otherwise—is outside the role of the judiciary.    *See, e.g.*, *United States v. Fifty-Two Firearms*, 362 F. Supp. 2d 1308, 1315 (M.D. Fla. 2005) (stating, "it is not the role of the judiciary to change the plain meaning of a statute, or to re-balance public policy already weighed by Congress").

To ascertain whether an official is entitled to qualified immunity, we must "evaluate whether [the] allegations, if true, establish a violation of a constitutional or statutory right," and if so, whether that right was "clearly established" such that it "provided fair warning to [the officers[ that they were violating the law." *Collier v. Dickinson*, 477 F.3d 1306, 1308, 1311 (11th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).  Courts may exercise their sound discretion in deciding which step to address first.  *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015).

When considering whether an official "would have known that his actions were prohibited by the law at the time he engaged in the conduct in question," "[t]he standard is one of objective reasonableness." *Collier*, 477 F.3d at 1311. We use two methods to determine whether a reasonable officer would know that his conduct violates federal law. The first "looks at the relevant case law at the time of the violation; the right is clearly established if a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (quotation and brackets omitted). The second "looks not at case law, but at the officer's conduct, and inquires whether that conduct lies so obviously at the very core of what the [law] prohibits that the unlawfulness of the conduct was readily

9

apparent to the officer, notwithstanding the lack of fact-specific case law." *Id.* (quotation and brackets omitted).

To establish a violation of the DPPA, a plaintiff must show "that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). "The plain meaning of the third factor is that it is only satisfied if [it is] shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)"; "the burden [to show this] is properly upon the plaintiff." *Id.* at 1111–12.

There is no case law clearly establishing that Fewless' use of the photos was impermissible. Moreover, Appellants were required to show that no reasonable officer in the officers' position could have believed that he was accessing or distributing the photos for a permissible use under the DPPA. Appellants failed to make that showing. Appellees are therefore entitled to qualified immunity.

The judgment of the District Court is **AFFIRMED**.

10

BLACK, Circuit Judge, specially concurring:

I agree summary judgment was properly entered in favor of Appellees. The law was not clearly established such that a reasonable officer in Appellees' position would have known presenting Appellants' driver's license photos to the Committee in the course of lobbying against the Bill was not a disclosure permitted under the exception for "use by . . . any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1).[1]

---

[1] My special concurrence should not be construed as a rejection of the majority's conclusion that the Government Function Exception applies.