[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13263
Non-Argument Calendar

_____

D.C. Docket No. 5:19-cv-00178-TES

SHANGIA WASHINGTON,

Plaintiff - Appellant,

versus

WARDEN,
Baldwin State Prison,
UNIT MANAGER FARLEY,
Baldwin State Prison,
UNIT MANAGER WARREN,
Baldwin State Prison,
OFFICER MILINER,
Baldwin State Prison,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 8, 2021)

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

At Baldwin State Prison, Shangia Washington was stabbed 38 times over a period of 62 seconds by two fellow inmates. Washington sued prison officials Krystle Milner,[1] Kenneth Farley, Lilian Warren, and Cedric Taylor, alleging that by failing to protect him, they violated his Eighth Amendment right to be free from cruel and unusual punishment.

The district court granted summary judgment to the prison officials. It held that though prison officials have a duty to protect prisoners from violence at the hands of other prisoners, there was no constitutional violation here. After careful review, we affirm on alternative grounds—because the law underlying the alleged constitutional violations was not clearly established, the officials are entitled to qualified immunity.

**I**

**A**

Shangia Washington and fellow inmates Raymond Dugger and Dejuan Gladdney were all housed in Dorm H-3 at Baldwin State Prison.[2] On the evening of December 22, 2017, Washington, Dugger, and Gladdney were watching

---

[1] The caption on appeal spells Officer Milner's name *Miliner*. We use Milner in accordance with the district court's and the parties' usage.

[2] We summarize the facts as stipulated by both parties for summary judgment.

television in the common space of the dorm. At some point, however, Dugger began taunting Washington. When Washington responded in turn, the situation quickly escalated. Dugger grabbed a knife from his pocket, approached Washington, and threatened to kill him. Washington retreated to his room to grab a weapon—a broomstick. In the ensuing fight, Dugger and Gladdney overcame Washington, and Washington was stabbed 38 times over the course of 62 seconds. Prison officials, unable to end the fight with verbal orders alone, terminated the fight by deploying pepper spray into the dorm.

**B**

Washington sued prison officials Krystle Milner, Kenneth Farley, Lilian Warren, and warden Cedric Taylor under 42 U.S.C. § 1983. He contends that they violated the Eighth Amendment's prohibition on cruel and unusual punishment when they failed to protect him, and that those violations were contrary to clearly established law, so the officials are not entitled to qualified immunity. *See Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (explaining that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In particular, Washington says that Milner, the on-duty Building H correctional officer, failed to prevent the fight when it was obvious one was about to occur and to break it up once it began; that unit managers Farley and Warren ignored requests that

3

Washington made over a month before the incident to be moved to a different building; and that Taylor, the Baldwin State Prison warden, failed to properly staff the prison, which led to Washington's stabbing.

The district court granted summary judgment to all defendants. It reasoned that Washington had shown neither that there was a substantial risk of harm nor that the officials had been deliberately indifferent to that risk. Washington testified that Dugger and Gladdney had been "throwing threats out" to other inmates in Dorm H-3 for over a month and had a "reputation" for violence. But that testimony, the district court explained, showed only a "mere possibility" of injury, not a "strong likelihood," as required by our precedents. Washington had not offered any evidence that Dugger and Gladdney had stabbed or assaulted any other inmates; in fact, Washington had testified that before he was stabbed, he couldn't have "fathom[ed]" that he would be stabbed the way he was. In any event, the district court continued, the officials were not deliberately indifferent to the risk. A prisoner usually must communicate some reason beyond the mere existence of a threat that could permit prison officials to conclude that a particular threat was substantial, and Washington did not offer any such reason here. *See Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019).

Washington timely appealed.

4

## II

We review the district court's ruling on a motion for summary judgment de novo. *Smith v. Fla. Dep't of Corrs.*, 713 F.3d 1059, 1063 (11th Cir. 2013). We may affirm the judgment of the district court on any ground supported by the record. *Bass v. Fewless*, 886 F.3d 1088, 1092–93 (11th Cir. 2018).

## III

Qualified immunity protects governmental defendants performing discretionary functions from suit in their individual capacities "unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s]' the conclusion for all reasonable, similarly situated public officials" that the defendants' actions violated the plaintiff's federal rights. *Marsh v. Butler Cnty, Ala.*, 268 F.3d 1014, 1030–31 (11th Cir. 2001) (*en banc*) (quoting *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1151 (11th Cir. 1994) (*en banc*)) (alteration adopted). Given that the prison officials here were performing discretionary duties, Washington must show (1) that the officials violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Marbury*, 936 F.3d at 1232. For a right to be clearly established, the plaintiff may either identify precedents with materially similar facts or show that the violation was so obvious that every reasonable officer would know that his actions were

5

unconstitutional. *Corbitt v. Vickers*, 929 F.3d 1304, 1311–12 (11th Cir. 2019); *see Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Eighth Amendment prohibits cruel and unusual punishments.[3] That prohibition requires prison officials to take reasonable measures to guarantee the safety of the inmates and protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 832–33. Though prison conditions may be harsh, "gratuitously allowing the beating . . . of one prisoner by another serves no 'legitimate penological objective.'" *Id.* at 833 (quoting *Hudson*, 468 U.S. at 548 () (alteration adopted).

Not every injury suffered by one prisoner at the hands of another, however, gives rise to constitutional liability for prison officials. Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," *Farmer*, 511 U.S. at 834 (quotation marks omitted), a prison official must have acted with deliberate indifference to a substantial risk of serious harm. Thus, to prevail on an Eighth Amendment claim, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury*, 936 F.3d at 1233 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)).

---

[3] In full, the Eighth Amendment says, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Though we may begin the qualified immunity inquiry with either the constitutional question or the question of whether the violation was clearly established, the Supreme Court has admonished us to "think hard, and then think again" before addressing the merits of the constitutional claim. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). For each defendant here, we thus begin—and ultimately end—our analysis with the issue of whether the alleged constitutional violations here were contrary to clearly established law.

We start with unit managers Farley and Warren. Washington contends that Farley and Warren were deliberately indifferent to a substantial risk of harm because they ignored requests that he made over a month before the incident to be moved to a different building. But not every reasonable officer would have known that under our precedents, the risk of harm to Washington was substantial—as opposed to a mere possibility. Washington only cited Dugger and Gladdney's general reputation for violence. He never claimed that Dugger or Gladdney threatened him directly, and in fact, he testified that he didn't know either Dugger or Gladdney before the incident occurred.

Washington cites *Rodriguez v. Sec'y for Dept. of Corrs.*, 508 F.3d 611 (11th Cir. 2007), for support, but that case is distinguishable. There, Rodriguez had informed prison staff that members of his former gang had threatened to kill him

7

upon release into the general prison population. *Id.* at 612. Rodriguez thus alleged a specific threat to his life by fellow inmates that he knew personally. On those facts, we held that a genuine issue of material fact existed about whether the risk of harm was substantial. *Id.* at 619. Here, by contrast, Washington relies only on Dugger and Gladdney's general reputation for violence.

At the same time, *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), suggests that the risk of harm here was *not* substantial. There, the prisoner-plaintiff had alleged that he heard from a friend that an unnamed prisoner intended to hurt him. *Id.* at 1235. Even with a specific threat, we nonetheless held that that threat alone did not establish a substantial risk of harm. We noted that the plaintiff needed to provide prison officials with "further information enabling them to conclude that the risk was substantial and not merely possible." *Id.* at 1236. Without a case directly on point, and at least one case that cuts against him, Washington has not shown that Farley or Warren acted contrary to clearly established law.

For a similar reason, warden Taylor is also entitled to qualified immunity. Washington says that Taylor could have provided additional security staff throughout the prison, which would have averted his stabbing. But even if those steps could have prevented the incident, Washington has not alleged—or attempted to show—that the prison conditions generally were so unsafe that any reasonable

8

official in warden Taylor's shoes would have known of a substantial risk of harm to Washington. *See Harrison v. Culliver*, 746 F.3d 1288, 1299–1300 (11th Cir. 2014) (holding that the prison warden could not be held liable despite evidence of four assaults in a specific location over three years because such evidence was "hardly sufficient" to demonstrate that the prison was one "where violence and terror reign").

The story is slightly different for correctional officer Milner. Washington claims that Milner was deliberately indifferent to a substantial risk of harm by failing to prevent the fight when it was evident that one was about to break out— and further indifferent by failing to attempt to break up the fight once it began. "Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Rodriguez*, 508 F.3d at 619–20 (quoting *Farmer*, 511 U.S. at 844). Here, while Milner may have known that there was a substantial risk of harm to Washington immediately before the stabbing, we cannot say that it was clearly established that Milner's actions in response were objectively unreasonable. Before the fighting began, Milner ordered Washington and Gladdney to stop arguing, radioed for backup, and reported that inmates in H-3 were arguing. After the fight began, Milner ordered them to stop. And again, she radioed for backup, reporting that the inmates were now fighting. Backup arrived

9

within one minute, and the fight was over in 62 seconds. Washington cites no cases in which we have found that an officer responding in a materially similar way was held liable under the Eighth Amendment.

To be sure, Washington can also overcome qualified immunity if the constitutional violations were so obvious that any reasonable officer would have known that the officers' actions were unconstitutional. *See Hope*, 536 U.S. at 741. But for the reasons explained above, the violations—if any—were not so egregious as to vitiate qualified immunity.

\* \* \*

In sum, unit managers Farley and Warren and warden Taylor were entitled to qualified immunity because not every reasonable officer in their circumstances would have known that the risk of harm to Washington was "substantial." Correctional officer Milner may have known of a substantial risk of harm to Washington, but it was not clearly established that her actions were unreasonable, and thus deliberately indifferent. All four defendants are thus entitled to qualified immunity.

## IV

For the foregoing reasons, we **AFFIRM**.

10